UNITED ANILINE COMPANY et al.,
Petitioners,

v.

COMMISSIONER OF INTERNAL REVENUE, Respondent.

No. 6060.

United States Court of Appeals
First Circuit.

Heard March 5, 1963.

Decided April 25, 1963.

James R. McGowan, Providence, R. I., with whom Lester H. Salter and Salter & McGowan, Providence, R. I., were on brief, for petitioners.

Earl J. Silbert, Atty., Dept. of Justice, with whom Louis F. Oberdorfer, Asst. Atty. Gen., and Lee A. Jackson and Melva M. Graney, Attys., Dept. of Justice, were on brief, for respondent.

Before HARTIGAN and ALDRICH, Circuit Judges, and GIGNOUX, District Judge.

ALDRICH, Circuit Judge.

This is another of a recent number of Tax Court cases (General Aggregates Corp. v. Commissioner, 1 Cir., 1963, 313 F.2d 25; Commissioner v. Young Motor Co., 1 Cir., 1963, 316 F.2d 267) involving the burden of proof. The taxpayers are United Aniline Company, hereinafter Aniline, and Louis Aronson (and wife), and the years 1954, 1955 and 1956. Aniline was engaged in the manufacture of dyes which it sold exclusively to the textile and tannery trades. Aronson was its president and principal stockholder. The rest of the stock was owned by his son James, also an employee of the company. Products and prices were more or less standard in this field, and Aniline faced competition from such major companies as Du Pont on the one hand and small manufacturers like itself on the other. Aronson testified that establishing personal relationships with customers was essential to doing business, and we see no reason to doubt it.

In 1934 Aronson learned that a competitor had purchased a yacht and had markedly increased his business by entertaining officials in the trade. From that date he followed suit. During the years in question Aniline owned Penguin, a 70-foot converted Army Engineers launch. Objection was made to the government's calling Penguin a yacht. Since she was used exclusively for day sailing and cruising by Aronson and guests she was fully within the common understanding of a yacht, irrespective of what she was termed when owned by the Army. The annual charges for her operation ran between $16,000 and $20,000, including insurance and depreciation. Aniline deducted the entire cost as business expense. The Commissioner disallowed one half, and charged this amount to Aronson [1] as personal income. Taxpayers petitioned for a restoration of the original status, but the Tax Court upheld the Commissioner.

At the outset, taxpayers make much of alleged inadequacies in the notices of deficiency. We have considered their arguments, but find the notices sufficient to present the issues raised and decided.

 Aronson was the principal witness at the trial. He testified that he did not keep a "guest log book" because guests would inspect it and jealousies might be aroused, and that, accordingly, he simply kept a list of guests, and the

---

1. No question arises with respect to James, whose use of Penguin was apparently minimal. Nor does any question arise from the fact that any income attribution to Aronson would be a preference to one stockholder. Cf. General Aggregates Corp. v. Commissioner, supra.

dates they were aboard, in his bureau drawer. He failed to explain why a more complete log could not have been similarly kept. Taxpayers are required to keep records and we might note forthwith that we regard this absence (viz., of even an informal log covering the use of the vessel when no such guests were aboard) a matter of some significance, especially since Aronson testified that he realized that the use of the boat was likely to be "checked." [2] As Judge Learned Hand remarked in Cohan v. Commissioner, 2 Cir., 1930, 39 F.2d 540, at 544, the (Board) may "bear * * * heavily if it chooses upon the taxpayer whose inexactitude is of his own making." See also Richard A. Sutter, 1953, 21 T.C. 170. This seems such a case.

The informal lists were introduced in evidence. Aronson testified that all of the parties named were owners or officials in the textile or tannery trade, and described them loosely as "customers and prospects." The court found on this evidence, "All of the individuals whose names appear on these lists were either executives or owners of companies which were in the textile or tannery business. During the period April 30 through August 31, 1954, approximately 15 different guests of this description were entertained aboard the Penguin on approximately 45 different occasions; during the period May 28 through September 24, 1955, approximately 30 different guests of this description were entertained on approximately 51 different occasions; and during the period May 28 through October 14, 1956, approximately 23 different guests of this description were entertained on approximately 45 different occasions. These guests were usually accompanied by their wives, and Aronson's wife was also usually aboard and acted as hostess."

On cross examination, however, it appeared that there were various occasions during each season when Aronson and his wife were aboard without guests, and that during a three-weeks cruise to Maine each year they were alone about half of the time. Although perhaps not "many," as found by the court, admittedly one, and arguably a larger number, of the couples frequently aboard, in addition to being actual or prospective customers, were "close" personal friends. Indeed, although Penguin carried some forty named business guests, in addition to their wives, this first couple and one other occupied one half of all the days specified on the lists for the three years. We agree with the Government that it is a question of fact how much entertainment is needed to attract, and to retain, a single customer, and that there is a heavy burden upon taxpayers on this evidence. Aronson's testimony that Penguin was "the best salesman we ever had," and that there were only two or three non-business guests in three years, would not on this record even warrant, let alone compel, a finding in accordance with taxpayers' contentions that Penguin was maintained "exclusively for business purposes." [3]

We have put the foregoing phrase in quotation marks because in their opening to the Tax Court taxpayers stated their "position [to be] that this boat was maintained *exclusively* for business purposes * * * and there is *no basis* for disallowing these expenses to the corporation and also treating these amounts as income to * * * Mr.

2. Log books kept by now unavailable captains were offered by the government and introduced in evidence over taxpayers' objections, but subsequently excluded because not shown to have been kept under Aronson's direction or in the ordinary course of business. Although the court stated it was not considering them, taxpayers claim that certain findings must have come therefrom. We do not agree. These findings came principally from cross examination of Aronson after his memory was refreshed by the books. This was entirely proper whether the books were admissible or not.

3. In this opinion we have assumed that the entertainment of customers was, in general, a proper business expense without the need of proving specific results, a matter much mooted in the briefs.

Aronson." (ital. suppl.) In their petition for review they say the same. We interpret this as contending that, on the evidence, the only possible finding was that Aronson's personal enjoyment of the yacht was insignificant. In their briefs here they seem to take a further position which, although we are not bound to, we will consider. This is that even if there was some basis for denying part of the expense to Aniline it was incumbent upon the "Commissioner [to] present * * * evidence to support [his] allocation." We take this and other statements to mean that there was an unsatisfied burden on the Commissioner to show that he was reasonable in making the particular allocation he did.

■■ Passing the fact that in our opinion the Commissioner can be said to have made a reasonable showing with respect to a 50% allocation, this argument involves a serious misconception on taxpayers' part. We agree with them that the Commissioner's determination of amounts is not "evidence." But we cannot agree with those courts which appear to say that it merely shifts onto the taxpayer the "burden of going forward with evidence," see, e. g., Stout v. Commissioner, 4 Cir., 1959, 273 F.2d 345, 350, or that it creates a presumption which "disappears" in the face of positive evidence. Stout v. Commissioner, supra; Gersten v. Commissioner, 9 Cir., 1959, 267 F.2d 195, 199.[4] While it may not be uncommon to use the word "presumption," it must be done only when it is made clear that the taxpayer never loses the burden of proving the Commissioner's determination erroneous. See Sharaf v. Commissioner, 1 Cir., 1955, 224 F.2d 570, 572. The danger of speaking of presumptions in isolation is that it may lead to the error, illustrated in

Clark v. Commissioner, 9 Cir., 1959, 266 F.2d 698, of concluding that if taxpayer introduces evidence from which it "could" be found that the Commissioner's determination was erroneous the "disappearance" of the presumption places the burden of proof on the Commissioner. Id. at 706. This, of course, is not to deny that on the record as a whole the case in favor of taxpayer may be so strong that it must be ruled that he has met his burden. Ansley v. Commissioner, 3 Cir., 1954, 217 F.2d 252; Blackmer v. Commissioner, 2 Cir., 1934, 70 F.2d 255. Such, however, is a very different matter. Nor is it this case.

Neither in the Tax Court, nor in their briefs here, have taxpayers sought to show, by either evidence or argument, that some other expense allocation would have been mathematically more appropriate than the one determined by the Commissioner. Their evidence failed to meet even the minimum requirement of showing that the Commissioner's figure was plainly wrong. Cf. Helvering v. Taylor, 1935, 293 U.S. 507, 55 S.Ct. 287, 79 L.Ed. 623; Conrad & Co. v. Commissioner, 1 Cir., 1931, 50 F.2d 576. Under these circumstances there can be no basis for their complaint that the Commissioner failed to present evidence to support his allocation. It must stand.

■ By the same token it could not be said that Aronson did not receive tangible, and hence taxable, benefits over and beyond the incidental ones which may be conferred by attendance at a predominantly business function. It might be that the court used too large a measure if, which is not entirely clear, it suggested that his enjoyment of the yacht when strictly business guests were entertained was such a taxable benefit. This we need not decide, although we

---

4. It is interesting to note that the primary citation in Gersten is to Welch v. Helvering, 1933, 290 U.S. 111, 54 S.Ct. 8, 78 L.Ed. 212, which did, indeed, speak of a "presumption," but said nothing about it disappearing. Rather, in the very same sentence, the court stated that the determination placed the burden of proof on the taxpayer. Presumption or no, the burden of proof never shifts, Commercial Molasses Corp. v. New York Tank Barge Corp., 1941, 314 U.S. 104, 62 S.Ct. 156, 86 L.Ed. 89; Polizzi v. Commissioner, 6 Cir., 1959, 265 F.2d 498, although loose language to the contrary is said to be "notorious." Commercial Molasses Corp. v. New York Tank Barge Corp., 2 Cir., 1940, 114 F.2d 248, 251.

might see a basis for such a finding when the choice of an expensive recreational facility for business purposes was fully in the hands of the stockholder who was to use it.[5] But certainly where this facility was enjoyed on entirely separate occasions which were not predominantly, and in some cases not at all, business-motivated, the fair value of such use is what has been loosely called a constructive receipt. W. D. Gale, Inc. v. Commissioner, 6 Cir., 1961, 297 F.2d 270;[6] American Properties, Inc., 1957, 28 T.C. 1100, aff'd, 9 Cir., 1958, 262 F.2d 150; Challenge Mfg. Co., 1962, 37 T.C. 650. It is true that the court equated the value of that use with the pro rata expense. This equivalence, at least when there has been substantial personal use of the facility, does not seem arbitrary and unreasonable in the absence of any direct evidence of fair value. Cf. Robie v. Ofgant, 1 Cir., 1962, 306 F.2d 656; Challenge Mfg. Co., supra. Even if, which we do not decide, the court may have judged Aronson's enjoyment by a partially wrong standard we could not say that on the record as a whole the Commissioner's determination has been refuted.

Finally, to the extent the court's decision may be a departure from Aronson's cited case of Hal E. Roach, 1930, 20 B.T.A. 919, we agree with the present court. In Hal E. Roach Studios, 20 B.T.A. 917, decided the same day, the Board, upon finding that the company's sole stockholder to a limited extent, and his father and mother and other members of his family to a great extent, used the company's yacht for living quarters, disallowed one half of the operating ex-

penses as a corporate deduction. Taxpayers show no enthusiasm for the Studios case, but seek to take comfort from the other. In Roach's individual case the Board refused to charge any of the disallowed expense as a constructive payment to him. It did so, however, only on the express finding that use by his family was "[i]n no sense * * * for the benefit of petitioner." On this assumption (which we might well have questioned) that is not this case.

Judgment will be entered affirming the decisions of the Tax Court.

---

5. One may well suspect that a stockholder who did not receive substantial personal benefits from an activity such as yachting would follow John Florio's advice and "Praise the sea; on shore remain." Second Fruits (1591). Congress has exhibited similar cynicism. Under the present law a corporation is treated less indulgently with respect to expensive recreational facilities which are primarily for the benefit of large shareholders rather than primarily for the benefit of ordinary employees. 26 U.S.

C.A. § 274(e) (5), 76 Stat. 976. Under proposed Regulations it will in certain other cases be relevant who made the choice. See Proposed Income Tax Reg. § 1.274-4(e) (5) (i), 28 Fed.Reg. 3145.

6. Before the Tax Court the taxpayer apparently conceded this issue. W. D. Gale, Inc., 1960, 19 CCH Tax Ct. Mem. 998. There is nothing to show from the opinion of the court of appeals, however, that this was not a bona fide decision of a bona fide appeal.