WILLIAM B. LEVY, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent; DELSTEEL, INC., Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Levy v. Commissioner
Docket Nos. 13637-79, 13638-79.
United States Tax Court
T.C. Memo 1984-306; 1984 Tax Ct. Memo LEXIS 368; 48 T.C.M. (CCH) 293; T.C.M. (RIA) 84306; June 18, 1984. *368 P was the president, sole director, and controlling shareholder of D. In 1976, D leased an airplane for use in its business. During 1976, D also made its airplane available to certain of its employees for their personal use. P was the only person to use the airplane in 1976 for personal purposes, and his personal use constituted a substantial portion of the total use of the airplane during 1976. Held: (1) D is entitled to deduct expenses attributable to the personal use of the airplane by P since personal use of the airplane constitutes additional compensation rather than dividend income to P; and (2) amount of additional compensation to P determined. Robert E. Schlusser, for the petitioners. Evelyn E. Small, for the respondent. SIMPSON
MEMORANDUM FINDINGS OF FACT AND OPINION SIMPSON, Judge: The Commissioner determined a deficiency of $5,747 in the Federal income tax of the petitioner, William B. Levy, for 1976. He also determined a deficiency of $5,615 [1] in the Federal income tax of the petitioner, Delsteel, Inc., for the same year. The issues for decision are: (1) Whether the corporate petitioner is entitled to deduct expenses attributable to the personal use of a corporate airplane by its principal shareholder; (2) what portion of the expenses of the corporte airplane are deductible by the corporation; and (3) what it the proper measure of the benefit received by the *370 individual petitioner as a result of his personal use of the airplane. FINDINGS OF FACT Some of the facts have been stipulated, and those facts are so found. The petitioner, William B. Levy, was a resident of Wilmington, Del., at the time he filed his petition. He filed his individual Federal income tax return for 1976 with the Internal Revenue Service Center, Philadelphia, Pa. The petitioner, Delsteel, Inc. (the corporation), is a Delaware corporation having its principal office in Wilmington, Del., at the time it filed its petition. The corporation filed its corporate Federal income tax reture for its taxable year ended December 31, 1976, with the Internal Revenue Service Center, Philadelphia, Pa. Mr. Levy will sometimes be referred to as the petitioner. During 1976, the petitioner was the president and sole director of the corporation. In 1976, he was also the corporation's controlling shareholder and owned 3,988 shares of its stock, which represented all but one share *371 of the outstanding voting stock. The remaining share was owned by the petitioner's son, R. Lawrence Levy (Larry), who was the corporation's vice president of sales. The corporation was engaged in the business of manufacturing and selling accessories (chisels, moil points, etc.) for power hammers. On February 10, 1976, the corporation leased a previously used Cessna 421-B Golden Eagle airplane (the airplane) pursuant to a lease which required the corporation to pay a fixed monthly rental and all the expenses of repairing, maintaining, and operating the airplane. The airplane was a pressurized twin-engine cabin class airplane with seating for 6 persons, not including the pilot and co-pilot. Neither the petitioner nor Larry could personally fly the airplane. At the time the corporation leased the airplane, it had a full-time employee in its sales department who could fly the airplane.However, that employee subsequently left the corporation, and thereafter, the corporation employed a number of pilots on a part-time basis. The corporation originally leased the airplane for business purposes. Larry conceived the idea of leasing an airplane for use in the corporation's business. He *372 believed that having an airplane would enable the corporation to increase its sales because key personnel of the corporation would be able to visit customers or have customers visit the corporation's offices more easily. He particularly believed that having customers visit the corporation's offices was beneficial to its business. The corporation also had targeted seven current and prospective customers that it expected could generate more business for the corporation.The petitioner concurred in Larry's reasons for leasing the airplane. During 1976, the airplane was used in an effort to increase sales to the targeted customers, and 1976 sales to such customers increased 77 percent over sales to the same customers in 1975. The 1976 increase in sales to targeted customers was significantly greater than the corporation's overall increase in sales for such year. The corporation's profits derived from the increased sales to the targeted customers in 1976 exceeded all the costs to the corporation for its lease and use of the airplane during 1976. The increase in sales to the targeted customers in 1976 was attributable in part to the corporation's use of the airplane. During 1976, the *373 airplane was used on six different occasions by the corporation's personnel to visit the targeted customers or to bring personnel of such customers to visit the corporate offices. The airplane was also used on five other occasions for various business purposes during 1976. By memorandum dated March 1, 1976, the corporation offered the use of the airplane to its executive employees for their personal use when it was not needed for business purposes. The petitioner made the decision to make the airplane available to the executive employees for personal purposes. The executive employees to whom personal use of the airplane was offered included the president, the four vice presidents, the secretary-treasurer, and the controller. Of such employees, only the petitioner and Larry were stockholders of the corporation. Larry estimated that the variable cost of operating the airplane was $50 per hour, and the petitioner decided that $50 would be the hourly rate charged to the executive employees for personal use of the airplane. During 1976, the petitioner used the airplane for personal purposes for 58.6 hours. He used the airplane to visit his daughter in Ann Arbor, Mich., and to *374 travel to airports near his summer home in Ontario, Canada. Such flights could have been made in a smaller airplane, a Cessna 150, 172, or 182. In 1976, he paid the corporation $2,845 for such use. None of the other executives used the airplane for personal trips during 1976. Three executive employees had intended to use the airplane for personal purposes in 1976, but none of them actually did so. One executive's plans conflicted with a business need for the airplane; the other two later decided not to use the airplane because of changes in their plans. In addition to the business flights and the petitioner's personal flights, some flying hours were used in 1976 in testing the airplane and in qualifying pilots. When the airplane was leased, it had not been flown for 6 months and needed to be tested in order to ensure that it was fully operational. In addition, when the corporation hired part-time pilots, each had to have 25 hours of experience in an aircraft which was the same made and model as the airplane, in order to satisfy one of the requirements in the corporation's insurance policy. During 1976, the airplane was flown the following number of hours: Business use
Targeted customers
31.4 hours
Other
18.5
Personal use
By petitioner
58.6
Testing, pilot training,
and qualification
17.0
125.5 hours
*375 The corporation's total airplane expenses for 1976 were as follows: Rent
$22,774
Delaware Tax
455
Hanger
2,250
Insurance
3,337
Maintenance and repairs
9,482
Gas and oil
4,737
Pilot
1,804
Total
$44,839
The cost of rent, Delaware tax, hanger, and insurance were fixed and were not dependent on the number of hours of actual operation of the airplane. In part, maintenance and repair costs were incurred in ensuring that the airplane was filly operational after having not been flown for 6 months, and in part, such costs represented normal maintenance and repair. The costs of gas and oil and pilot were dependent on the hours of actual operation of the airplane. The corporation's actual variable cost per hour of operating the airplane, not including any maintenance or repair costs that might be ascribed to use of the airplane during 1976, was as follows: Gas and oil
$4,737.00         Pilot
1,804.00         $6,541.00         Divided by hours
125.5          $52.12 per hour
On its 1976 Federal income tax return, the corporation deducted $44,839 for airplane expenses. The Commissioner determined *376 that $18,090 of the corporation's claimed aircraft expenses were not deductible. He calculated such amount by multiplying the total aircraft expenses by the number of hours of nonbusiness use, 58.6, over the total hours, 125.5, and subtracting therefrom the amount of reimbursement paid by the petitioner. On his 1976 Federal income tax return, the petitioner did not report any income, and he did not claim any deductions, with respect to his personal use of the airplane. The Commissioner determined that the petitioner had received income during 1976 in the amount of $5,875 as a result of the corporation having allowed him to use the airplane for less than its fair rental value. OPINION The first issue for decision is whether the corporation is entitled to deduct expenses attributable to the personal use of a corporate airplane by its principal shareholder. The corporation argues that the petitioner's use of the airplane was in his capacity as an employee of the corporation, rather than in his capacity as a stockholder. Accordingly, it contends that the expenses incurred by it attributable to the petitioner's personal use of the airplane are deductible as ordinary and necessary *377 business expenses under section 162(a) of the Internal Revenue Code of 1954[2] since such expenses were incurred to promote employee good will and to strengthen the employer-employee relationship. The Commissioner contends that by reason of section 262 the personal expenses of a corporation's shareholder are not deductible by it. He argues that where ownership and maintenance of property, such as an airplane, is primarily for a business purpose and any personal use by a shareholder is distinctly secondary or merely incidental, deductions for expenses may be permitted; however, where ownership and maintenance of property by a corporation is primarily for the personal use of the shareholders, such expenses are not ordinary and necessary, and therefore are not allowable deductions. The Commissioner contends that the personal use of the airplane by the petitioner in the present case cannot be said to have been insignificant or incidental. Finally, he argues that where a corporation confers an economic benefit on its shareholders without an expectation of reimbursement, such benefit is a constructive dividend. *378 Based on the entire record, we agree with the corporation. It is well settled that when corporate property is used by a stockholder or a member of his family for personal purposes, not proximately related to the corporate business, the corporation is not entitled to deductions to the extent that they relate to such personal use, and the fair rental value of such property is includable in the stockholder's income. Commissioner v. Riss,374 F.2d 161, 166-167 (8th Cir. 1967), affg. on this issue a Memorandum Opinion of this Court; United Aniline Co. v. Commissioner,316 F.2d 701, 704-705 (1st Cir. 1963), affg. a Memorandum Opinion of this Court; Estate of Runnels v. Commissioner,54 T.C. 762, 767 (1970); Dole v. Commissioner,43 T.C. 697, 707 (1965), affd. per curiam 351 F.2d 308 (1st Cir. 1965). On the other hand, where corporate property is used for personal purposes by an individual in his capacity as an employee, the fair rental value of such property is compensation to the employee, and deductible as compensation by the corporation. Secs. 61(a)(1); 162(a)(1). [3] Whether a corporate distribution *379 is a dividend or something else, such as a gift, compensation for services, repayment of a loan, or payment for property purchased, is a question of fact to be determined on the basis of the facts and circumstances in each case. Loftin and Woodard, Inc. v. United States,577 F.2d 1206, 1242 (5th Cir. 1978); Lengsfield v. Commissioner,241 F.2d 508, 510 (5th Cir. 1957), affg. a Memorandum Opinion of this Court. The corporation has the burden of showing that the use of corporate property for personal purposes was intended as additional compensation. Motel Co. v. Commissioner,340 F.2d 445, 449 (2d Cir. 1965), affg. a Memorandum Opinion of this Court; Challenge Manufacturing Co. v. Commissioner,37 T.C. 650, 663 (1962). In addition, careful scrutiny is particularly called for in the case of a closely held corporation. Loftin and Woodard, Inc. v. United States,577 F.2d at 1214; Motel Co. v. Commissioner,340 F.2d at 449; International Artists, Ltd. v. Commissioner,55 T.C. 94, 108 (1970). *380 The Commissioner cites four cases in support of his contention that where a corporation confers an economic benefit on its shareholders without expectation of reimbursement, that benefit is a constructive dividend. However, such cases do not support his argument that in the present case the use of corporate property constitutes a constructive dividend. In Magnon v. Commissioner,73 T.C. 980 (1980), a corporation performed electrical contracting services for its two sole shareholders on their properties. Nicholls, North, Buse Co. v. Commissioner,56 T.C. 1225 (1971), involved personal use by a shareholder of a corporate-owned yacht. Ashby v. Commissioner,50 T.C 409 (1968), also involved personal use by a shareholder of a corporate-owned yacht. Finally, International Trading Co. v. Commissioner,275 F.2d 578 (7th Cir. 1960), affg. a Memorandum Opinion of this Court, involved expenditures in connection with summer resort property owned by a corporation and used by its shareholders and their families. However, in none of the cases cited by the Commissioner was use of the corporate property made available to employees *381 of the corporations who were not shareholders. In the present case, it is uncontroverted that the corporation's airplane was made available to all the executive employees, including the five who were not shareholders. The Comissioner has not argued, and there is no evidence to indicate that, the offer of the use of the airplane was disigned to primarily benefit the petitioner. While it is true that no employee, other than the petitioner, actually used the airplane, we are convinced that the corporation's offer to allow its executive employees to use the airplane for personal purposes was bona fide. The charges for such use did not prohibit the executive employees from using the airplane for personal purposes. Moreover, two executive employees testified that they understood that the airplane was available for their personal use and that they had intended to use the airplane for personal purposes during 1976. One of the employees who testified decided not to use the airplane for personal reasons; the other employee's plans conflicted with business use of the airplane. In addition, there is evidence in the record that a third employee, who no longer worked for the corporation at *382 the time of trial, had requested to use the airplane but had decided not to for personal reasons. The facts in the present case are clearly distinguishable from those in the cases relied upon by the Commissioner and from the facts in cases which have held that personal use of corporate property by a shareholder constitutes a constructive dividend. In the present case, the corporation has clearly shown that use of the airplane was in fact made available to all its executive employees. Such fact is persuasive evidence that the airplane was made available to the petitioner in his capacity as an employee of the corporation rather than in his capacity as a shareholder, and we so hold. Our resolution of the first issue also resolves the second issue for decision, which is what portion of the expenses of the corporate airplane are deductible by the corporation. All of the corporation's airplane expenses are deductible under section 162 either as expenses for the business use of the airplane or as additional compensation. The third issue for decision is what is the proper measure of the benefit received by the petitioner as a result of his personal use of the airplane. The petitioner *383 contends that the benefit received by him was private air transportation. He argues that the value of such private air transportation should be measured not by the cost of chartering a Cessna 421-B, the type of airplane actually used, but rather by the cost of chartering a smaller Cessna 150, 172, or 182, and of which could have been used to make the petitioner's personal trips. The Commissioner, on the other hand, contends that the value of the benefit received by the petitioner is the fair rental value of a comparable airplane, less the amount reimbursed to the corporation. He argues that the fair rental value of the same type airplane as that leased by the corporation, a Cessna 421-B, was $225 per hour in 1968, 8 years before the year in issue, and that he adjusted such figure downward to $200 per hour to account for the fact that the corporation's airplane was used. The petitioner has the burden of disproving the Commissioner's determination. Rule 142(a), Tax Court Rules of Practice and Procedure; Welch v. Helvering,290 U.S. 111 (1933); Loftin and Woodard, Inc. v. United States,577 F.2d at 1223. The value of the benefit received as a result *384 of the use of corporate property is the fair rental value of such property less any reimbursement. Ireland v. United States,621 F.2d 731, 737-739 (5th Cir. 1980); Loftin and Woodard, Inc. v. United States,supra at 1219; Dole v. Commissioner,43 T.C. at 707. The cost incurred in the use of corporate property is not the preferred method of valuation. Ireland v. United States,supra at 737; Loftin and Woodard, Inc. v. United States,supra at 1223. In the present case, the Commissioner introduced evidence that the fair rental value of a Cessna 421-B in 1968 was $225 per hour.Thus, he has supported his contention that the fair rental value of a used Cessna 421-B in 1976 was at least $200 per hour. The petitioner's argument that we should value the benefit received by him on the basis of the fair rental value of a smaller aircraft since such aircraft could have been used to make the trips that he made in the corporation's airplane is not supported by him. [4] The petitioner did not travel by the least expensive means possible, but he now asks to be treated as if he did. The petitioner's *385 argument is without merit. Accordingly, we hold that the petitioner received additional compensation during 1976 in the amount determined by the Commissioner. Decisions will be entered under Rule 155.
Footnotes
1. The parties have stipulated that the corporation has an unused investment credit of $13,970 arising in 1979 which carries back to and is usable in computing its income tax liability for 1976.↩
2. All statutory references are to the Internal Revenue Code of 1954 as in effect during 1976.↩
3. See also Reynard Corporation v. Commissioner,30 B.T.A. 451, 453 (1934); N.W.D. Investment Co. v. Commissioner,T.C. Memo. 1982-564; Whipple Chrysler-Plymouth v. Commissioner,T.C. Memo. 1972-55; Lang Chevrolet Co. v. Commissioner,T.C. Memo. 1967-212↩.
4. The petitioner's reliance on Ireland v. United States,621 F.2d 731 (5th Cir. 1980), is misplaced. In Ireland, the Commissioner based his valuation of air transportation provided to the taxpayer by the corporation for which he worked, not on the fair market value of a comparable service, but rather on an allocable portion of the total cost of operating the corporation's air fleet. 621 F.2d at 737↩. The Commissioner's determination in the present case was based on the fair market value of comparable service, not on costs.