# United States Court of Appeals
## For the First Circuit

No. 17-1265

TRANSUPPORT, INC.,

Petitioner, Appellant,

v.

COMMISSIONER OF INTERNAL REVENUE,

Respondent, Appellee.

APPEAL FROM THE UNITED STATES TAX COURT
[Hon. Mary Ann Cohen, U.S. Tax Court Judge]

Before

Lynch, Stahl, and Barron,
Circuit Judges.

Michael S. Lewis, with whom Rath, Young and Pignatelli, P.C. was on brief, for appellant.
Anthony T. Sheehan, with whom David A. Hubbert, Acting Assistant Attorney General, and Richard Farber, Attorney, Tax Division, Department of Justice, were on brief, for appellee.

February 14, 2018

**LYNCH**, **Circuit Judge**.   Transupport, Inc. appeals from the Tax Court's decision upholding the Commissioner's notice of deficiency, which, for tax years 2006 through 2008, reduced Transupport's cost of goods sold, reduced deductions it took for compensation paid to four employee-shareholders, and assessed a 20% accuracy-related penalty.   See Transupport, Inc. v. Comm'r (Transupport II), 112 T.C.M (CCH) 580, 2016 WL 6900913 (2016). This is the Tax Court's second opinion in this case.   The first addressed whether Transupport committed fraud.   See Transupport, Inc. v. Comm'r (Transupport I), 110 T.C.M. (CCH) 268, 2015 WL 5729787 (2015).   We affirm the Tax Court's decision in Transupport II, as to which this appeal is taken.

## I. Background

A.   Transupport's Business

Transupport is a wholesaler of engines and engine parts used in military vehicles.   Transupport II, 2016 WL 6900913, at *1.   The portion of its business that is relevant to this dispute involved buying parts in bulk lots from the U.S. Government and reselling them.   Id.   Harold Foote ("Foote") founded Transupport in 1972 and served as its president and chief executive officer. Id.   Foote's sons, William ("W. Foote"), Kenneth, Richard, and Jeffrey ("J. Foote"), were Transupport's only other full-time employees.   Id.   Foote owned almost all of Transupport's stock in

1999, but transferred Transupport's nonvoting common stock to his sons in equal portions in 2005.  Id. at *2.

At all relevant times, Elaine Thompson, a certified public accountant, served as Transupport's outside accountant.  Id.  Thompson prepared Transupport's tax returns based on handwritten summaries of the company's financials, which were usually prepared by J. Foote.  Id.  Thompson did not audit or verify the summaries.  Id.

B.    Cost of Goods Sold

A taxpayer's income from selling goods is calculated by taking the income generated by selling goods and subtracting the amount that the taxpayer paid for those goods, which is also known as the "cost of goods sold."  Treas. Reg. § 1.61-3(a) (as amended in 1992).  The cost of goods sold for a given tax year only includes the cost of the goods that the taxpayer sold in that tax year.  See id.  Given this constraint, the cost of goods sold for a given tax year usually equals the beginning inventory (at cost) plus inventory purchases and inventory costs, minus the ending inventory (at cost).  Huffman v. Comm'r, 126 T.C. 322, 324 (2006).

Transupport used the gross profit method to determine its cost of goods sold.  See Transupport II, 2016 WL 6900913, at *2. So, instead of calculating the cost of goods sold by tracking changes in its inventory, Transupport selected a percent profit that it claimed to make on the sale of goods and used that figure

to generate its cost of goods sold as well as estimates of its beginning and ending inventory.  Id.  Transupport allegedly used a percent profit consistent with industry standards.  See Transupport I, 2015 WL 5729787, at *6.  Transupport's cost of goods sold "varied without explanation" from year to year, and Transupport kept no records indicating how it selected its gross profit percentage.  Id.

Transupport was audited by the IRS in 1984, and "the examining agent was aware that petitioner did not maintain a physical inventory of the unsold parts in its warehouse and backed into the closing inventory, reported in its returns, by using a percentage of sales as costs of goods sold." Transupport II, 2016 WL 6900913, at *2.  The IRS expressed disapproval of Transupport's methodology, but did not meaningfully adjust Transupport's cost of goods sold for the years under audit.  Id.  Transupport was audited again in 1992.  Id.  The IRS was again aware of Transupport's practice of not taking a physical inventory, and again the IRS auditor did not require changes.  Id.

Transupport continued its use of the gross profit method after the 1992 audit.  Its gross profit percentage changed each year, but remained between 39.3% and 31% from 1999 through 2008. Id.  It reported a cost of goods sold of $6,951,132 in 2006; $6,365,543 in 2007; and $7,519,086 in 2008, based on gross profit percentages of 33.4%, 39.3%, and 37%, respectively.  Id.

- 4 -

## C. Reasonable Compensation

Foote's sons were officers of Transupport, but "performed various and overlapping tasks for the company, including tasks that might have been performed by lower level employees." Id. at *1. Transupport paid each of Foote's sons $575,000 in 2006, $675,000 in 2007, and $720,000 in 2008. Id. at *3. Foote made the compensation decisions alone, without consulting his accountant. Id. "The only apparent factors considered in determining annual compensation were reduction of reported taxable income, equal treatment of each son, and share ownership." Id. Transupport did not pay dividends in the years at issue. See id.

## D. IRS Audit in 2009

Foote considered selling Transupport in 2007, and hired Richard Lodigiani, a consultant from BTS New England, to help him. Id. "Foote provided Lodigiani with estimates of inventory and profit margins on surplus parts," which Lodigiani used to draft a "Confidential Offering Memorandum." Id. The financial summary in the memorandum, based on information Foote had provided, asserted that "[i]t is conservatively estimated that actual gross profit on sales exceeds 75% on general part sales" and that "[m]anagement believes that non-obsolete inventory on hand exceeds $100,000,000.00 at cost." Id. The summary also "recast to market rate of $50,000 annually each" the salaries of Transupport's five

officers.  Id.  Lodigiani prepared an executive summary that asserted Transupport "currently has inventory in excess of $100,000,000.00 at cost with a retail market value that exceeds $500,000,000.00."  Id.

Copies of these documents were circulated to potential purchasers, one of whom notified the IRS Whistleblower Office in February 2008 of potential tax fraud.  Id. at *4.  In January 2009, the IRS commenced an audit, which originally focused on tax years 2006 and 2007, but was expanded to cover "1999 through 2005."  Id. The audit resulted in a notice of deficiency that adjusted the deductions Transupport took for compensation paid to Foote's sons in every year between 1999 and 2008, including adjustments of $1,375,000 in 2006, $1,862,436 in 2007, and $2,123,804 in 2008. Id. at *5.  The notice of deficiency also adjusted Transupport's cost of goods sold "to reflect a 25% cost and a 75% profit on petitioner's sales of surplus parts" for those years, applied a fraud penalty, and applied an accuracy-related penalty "to the extent that the fraud penalty did not apply."  Id.

E.  Tax Court Proceedings

Transupport timely petitioned the Tax Court for review. Two proceedings were held.  The Tax Court first heard evidence pertaining to the Commissioner's fraud claim.  The Tax Court determined that the Commissioner was unable to prove fraud by its burden of proof of clear and convincing evidence, given that the

Commissioner had not required changes to Transupport's tax reporting following the 1984 and 1992 audits. As a result, the Commissioner's assessments for 1999 through 2005 were time-barred and the fraud penalty was inapplicable. See Transupport I, 2015 WL 5729787, at *11. The Commissioner did not appeal.

The Tax Court, after further fact-finding, then issued a second, supplemental opinion upholding the notice of deficiency for 2006, 2007, and 2008 -- the only years still at issue. See Transupport II, 2016 WL 6900913, at *5. Transupport appealed.

## II. **Reasonable Compensation**

A taxpayer may only deduct salaries to the extent they are reasonable. See 26 U.S.C. § 162(a)(1). The Tax Court upheld the notice of deficiency's adjustment to deductions Transupport took for compensation paid to Foote's sons. See Transupport II, 2016 WL 6900913, at *5. Transupport challenges that decision, arguing that the Tax Court made errors of law and findings of fact contrary to the credible evidence in the record. These arguments are meritless.

A. Test for Determining Legal Compensation

This circuit uses a multi-factor test to determine whether compensation is reasonable. See Haffner's Serv. Stations, Inc. v. Comm'r, 326 F.3d 1, 4 (1st Cir. 2003). The goal of the test is to determine whether the compensation at issue would have been offered in an arm's-length bargain. Id. Transupport argues

that the Tax Court committed reversible error by not considering the return on equity enjoyed by its shareholders. This is a question of law, which we review de novo. Schussel v. Werfel, 758 F.3d 82, 87 (1st Cir. 2014).

There was no error in the Tax Court's application of this circuit's test, because it found that there was "no reliable evidence of actual return on investment." See Transupport II, 2016 WL 6900913, at *10. Transupport's sales materials indicated it was very profitable, but that does not square with its tax reporting. The expert witnesses on this issue never even attempted to reconcile the two. Id. at *11. The company's profitability and value depend heavily on its cost of goods sold but, as discussed in Section III.B, Transupport presented no credible evidence of its cost of goods sold. This makes it exceedingly difficult to value the company, and "[i]f the company cannot be valued, neither can the return to shareholders be calculated as a percentage of that value." Mulcahy, Pauritsch, Salvador & Co. v. Comm'r, 680 F.3d 867, 874 (7th Cir. 2012). The Tax Court was therefore correct to omit return-on-equity analysis when making its reasonable compensation determination.

B. Burden of Proof

Transupport next argues that the Tax Court erred by not shifting the burden of proof to the Commissioner on the reasonable

compensation issue. We review this question de novo. See Cavallaro v. Comm'r, 842 F.3d 16, 21 (1st Cir. 2016).

"[T]he taxpayer typically bears the burden of proving by a preponderance of the evidence that the Commissioner's tax assessment is erroneous."[1] Id.; see Tax Ct. R. 142(a)(1). That burden can shift to the Commissioner if the taxpayer shows that the notice of deficiency is arbitrary and excessive.[2] See Cavallaro, 842 F.3d at 21.

The Tax Court, in its second opinion, found that the Commissioner's method of determining reasonable compensation was "rational and not arbitrary or unreasonable." Transupport II, 2016 WL 6900913, at *11. This determination had sufficient support in the record. The court heard testimony from Frank J. Wojick, Jr., the IRS agent who performed the Commissioner's reasonable compensation analysis, describing his method, which involved comparing Foote's sons' compensation to that of officers at similarly sized companies in similar lines of business. See id. at *4-5, *11. As the Tax Court noted, Wojick's method was very

---

[1] 26 U.S.C. § 7491(a) establishes a different burden-shifting scheme if a taxpayer meets certain criteria. The Tax Court determined that § 7491 did not apply, Transupport II, 2016 WL 6900913, at *7, and Transupport does not appeal that finding.

[2] The Commissioner argues that Hanover Insurance Co. v. Commissioner, 598 F.2d 1211, 1219 (1st Cir. 1979), prevents the burden from shifting in deduction cases even if the notice of deficiency is shown to be arbitrary and excessive. We do not reach this issue.

similar to that of Transupport's expert, except that Transupport's expert "adopted the maximum compensation shown for the various categories of officers." Id. at *11. While Wojick's analysis was imperfect, "any identified errors favored [Transupport]." Id. Given that the notice was not arbitrary or excessive, the Tax Court's decision not to shift the burden of proof was correct. See Cavallaro, 842 F.3d at 21.

Based on Estate of Mitchell v. Commissioner, 250 F.3d 696 (9th Cir. 2001), Transupport argues that the burden should shift because the notice of deficiency was based on a valuation disavowed by the Commissioner. See 250 F.3d at 702. This case is unhelpful for three reasons. First, the Commissioner here never disavowed the notice of deficiency; it merely attempted to pursue a larger deficiency at trial. Second, there was evidence supporting the reasonableness of Wojick's method, so the notice of deficiency was never "utterly without foundation."[3] Cavallaro, 842 F.3d at 21. Third, the court in Estate of Mitchell found that the notice of deficiency was excessive because the testimony of an IRS witness and a letter written by the Commissioner's appraiser indicated as

---

[3] Transupport argues that the Tax Court erred by relying on Wojick's opinion of the Commissioner's method for determining reasonable compensation. In Transupport's view, Wojick provided de facto expert testimony under the guise of layperson testimony, in violation of the Federal Rules of Evidence. This argument founders because the court relied on the reasonableness of Wojick's methodology, not Wojick's opinion of that methodology. Transupport II, 2016 WL 6900913, at *11.

much.  See 250 F.3d at 702.  Here, the testimony of Wojick and Gregory Scheig, the Commissioner's expert witness on this point, indicated that, if anything, the notice of deficiency underestimated Transupport's understatement of income tax.  See Transupport II, 2016 WL 6900913, at *11.

C.    Tax Court's Evaluation of the Evidence

Transupport also argues the Tax Court erred by basing its reasonable compensation determination on the fact that "[n]one of the Foote sons had special experience or educational background[s]."  Id. at *8.  In Transupport's view, Foote's sons gained valuable experience by working at the company for many years, and they were indispensable to its business.

The Tax Court's findings of fact are reviewed for clear error, Haffner's Serv. Stations, Inc., 326 F.3d at 3, and this finding has sufficient support in the record.  Transupport bore the burden of proof on this issue and failed to provide sufficient evidence justifying the deductions.  Foote's sons lacked basic knowledge of the managerial roles they purportedly held, and many of the tasks they performed were menial.  See Transupport II, 2016 WL 6900913, at *8.  Transupport does not challenge either of these findings on appeal, instead attempting to gainsay them with testimony from Foote and his sons claiming that Transupport's success had "been based upon the collective efforts of its officers and the unique knowledge-base they have established in their

- 11 -

industry."  Given the Tax Court's unrebutted findings of fact, Transupport's reference to self-interested witness testimony is insufficient to show that the Tax Court clearly erred in finding that Transupport had not met its burden.

### III. Cost of Goods Sold

Transupport argues that the Tax Court erred by adopting the notice of deficiency's 75% gross profit percentage, on the grounds that doing so is inconsistent with the Tax Court's rejection of the 75% figure in a prior opinion in this case and with the evidence presented.[4]  We review the Tax Court's determination of Transupport's gross profit percentage for clear error.  Estate of Todisco v. Comm'r, 757 F.2d 1, 4 (1st Cir. 1985).

Section 446(b) of the Internal Revenue Code provides that "if the [taxpayer's] method [of accounting] does not clearly reflect income, the computation of taxable income shall be made under such method as, in the opinion of the Secretary, does clearly reflect income."  Further, 26 U.S.C. § 471(a) provides that "[w]henever in the opinion of the Secretary the use of inventories is necessary in order clearly to determine the income of any taxpayer, inventories shall be taken by such taxpayer on such basis

---

[4]    Transupport argues in its reply brief that the burden should have shifted to the Commissioner on the cost of goods sold issue because the notice of deficiency was arbitrary and excessive. That argument is waived.  Small Justice LLC v. Xcentric Ventures LLC, 873 F.3d 313, 323 n.11 (1st Cir. 2017) ("[A]rguments developed for the first time in a reply brief are waived.").

- 12 -

as the Secretary may prescribe as conforming as nearly as may be to the best accounting practice in the trade or business and as most clearly reflecting the income."  Together, these provisions "vest the Commissioner with wide discretion in determining whether a particular method of inventory accounting should be disallowed as not clearly reflective of income."  Thor Power Tool Co. v. Comm'r, 439 U.S. 522, 532 (1979).

A.    The Tax Court's Finding in its First Opinion

The taxpayer claims that the "Tax Court failed to recognize that Transupport had, in fact, met the only burden the law imposes on it: the burden of proving that the IRS's notice of deficiency was erroneous."  In making this argument, the taxpayer seems to be saying, albeit inarticulately, that when the Tax Court found that the 75% gross profit was "improbable," Transupport I, 2015 WL 5729787, at *7, it essentially made a determination that the deficiency notice was arbitrary.

If the Tax Court determines that the Commissioner's assessment was arbitrary, then it must determine the proper amount of tax liability for itself.  See Cavallaro, 842 F.3d at 26 (discussing Helvering v. Taylor, 293 U.S. 507, 515 (1935)). However, there was no such finding by the Tax Court here.

The Tax Court expressed skepticism about the Commissioner's 75% figure in its first opinion in this case.  See Transupport I, 2015 WL 5729787, at *7.  Still, the Tax Court's

- 13 -

determinations in its two opinions are internally consistent given the different burdens of proof in the two proceedings and the poor quality of the evidence presented by the taxpayer. In the first proceeding, the Commissioner was required to prove by clear and convincing evidence that the taxpayer had committed fraud. See id. at *1; see also Tax Ct. R. 142(b). The Commissioner bore the burden of persuasion, and the court was "not persuaded" by the 75% figure for the purposes of determining whether Transupport committed fraud. Transupport I, 2015 WL 5729787, at *7. In the second proceeding, the taxpayer had to prove the notice of deficiency was incorrect by a preponderance of the evidence, and the Tax Court found that the taxpayer had failed to carry its burden. Transupport II, 2016 WL 6900913, at *12-13. The mere fact that the 75% figure could not survive the clear and convincing evidence standard does not mean that Transupport had shown the figure was incorrect. The Tax Court's determination in the first proceeding therefore does not support an inference that the court's determination in the second proceeding was erroneous.

Furthermore, as discussed below, there was sufficient evidence in the record by which the Tax Court could conclude that the deficiency notice was not arbitrary. See Cavallaro, 842 F.3d at 21 ("[C]ourts commonly find [that a deficiency lacks a rational foundation] when the Commissioner makes no evidentiary showing at all."); see also JP Morgan Chase & Co v. Comm'r, 458 F.3d 564, 571

- 14 -

(7th Cir. 2006) ("In applying the arbitrary or unlawful standard, the tax court should bear in mind that the taxpayer retains the burden of proof, and any inadequacies with the Commissioner's method that are due to the taxpayer's failure to keep or provide records, to the extent that it affected the Commissioner's choice of method, may be taken into account.").

B.    The Tax Court's Evaluation of the Evidence

Transupport argues that the Tax Court clearly erred by adopting the Commissioner's gross profit percentage. The Tax Court's adoption of the 75% figure has sufficient support in the record. There was overwhelming evidence that Transupport had significantly underreported its gross profit percentage, that the 75% figure was based on Foote's admissions in its sales literature and to the IRS, and that Transupport's own poor recordkeeping rendered a more accurate determination impossible. On these facts, the Tax Court did not clearly err by upholding the Commissioner's adjustment.

Using the gross profit method, an increase to the value of the ending inventory would indicate that the reported cost of goods sold was overstated, see Transupport I, 2015 WL 5729787, at *7, and the Commissioner presented evidence that Transupport had massively understated its inventory. Foote testified at trial that Transupport's inventory was worth approximately $100 million at cost, while Transupport claimed to have an ending inventory

worth just $1,867,257 in 2007. Transupport II, 2016 WL 6900913, at *2. As the Tax Court recognized in its first opinion in this case, those two figures "cannot be reconciled." Transupport I, 2015 WL 5729787, at *6. A list of the parts in Transupport's inventory (the "Honeywell list") that was prepared by W. Foote, and is "reasonably accurate" according to J. Foote, indicated that a portion of Transupport's inventory had an original retail value of $312,413,889. Transupport II, 2016 WL 6900913, at *4. Transupport did not pay the original retail price, but "[t]he lower of cost or market value of the items on the Honeywell list alone far exceeded the total inventory values reported on petitioner's financial statements and tax returns." Id.

In response to the evidence of the taxpayer's substantial overstatement of the cost of goods sold, Transupport provided Michael Thompson as an expert witness on this point. But, the Tax Court supportably found that Thompson presented a flawed and biased analysis, id. at *12, and Transupport has not even attempted to rehabilitate Thompson's report or testimony in its briefing to this court. Transupport also relied on records of the cost of goods sold it had claimed in previous years, but the Tax Court correctly found that arbitrarily chosen gross profit percentages from previous years do not justify the cost of goods sold for the years at issue. See id. The only evidence offered by Transupport to support the records' veracity is the testimony

- 16 -

of its accountant, who conceded that the records were produced by plugging in the unverified figures that Transupport provided.

Transupport argues that the Honeywell list and Foote's admissions are unhelpful because of the great deal of obsolescence in Transupport's inventory. But Transupport did not track or quantify that obsolescence, and the Tax Court is permitted to "bear[] heavily if it chooses upon the taxpayer whose inexactitude is of his own making." United Aniline Co. v. Comm'r, 316 F.2d 701, 703 (1st Cir. 1963) (alteration in original) (quoting Cohan v. Comm'r, 39 F.2d 540, 544 (2d Cir. 1930) (L. Hand, J.)). Given the lack of evidence on obsolescence, the evidence demonstrating a large understatement of inventory, Foote's admissions, and that the burden of proof remained on Transupport at all times, the Tax Court did not clearly err by upholding the notice's gross profit percentage.

## IV. Substantial Understatement Penalty

The Code generally imposes a mandatory 20% accuracy-related penalty for "[a]ny substantial understatement of income tax," 26 U.S.C. § 6662(b)(2), unless the taxpayer can show "that there was a reasonable cause for such portion [of the understatement] and that the taxpayer acted in good faith with respect to such portion." Id. § 6664(c)(1). The "most important factor" when determining whether the taxpayer acted with reasonable cause and good faith is usually "the extent of the

- 17 -

taxpayer's effort to assess the taxpayer's proper tax liability." Treas. Reg. § 1.6664-4(b)(1) (as amended in 2003). The charged understatement is "substantial." 26 U.S.C. § 6662(d)(1)(B). Transupport argues that it acted with reasonable cause and good faith, and so the Tax Court's application of the penalty is erroneous. The application of an accuracy-related penalty is reviewed for clear error. Kaufman v. Comm'r, 784 F.3d 56, 66 (1st Cir. 2015).

Transupport argues that the penalty should not apply because it reported its tax liabilities consistent with the advice of a tax professional over many decades. "Reliance on . . . the advice of a professional tax advisor" can suffice if "under all the circumstances, such reliance was reasonable and . . . in good faith." Treas. Reg. § 1.6664-4(b)(1). But Transupport presented no evidence that it relied on the opinion of an expert for its compensation decisions. Transupport II, 2016 WL 6900913, at *13. On the cost of goods sold issue, the taxpayer cannot rely on its accountant because Foote's admissions about the value of Transupport's inventory indicate that the taxpayer knew or should have known that the figures it was providing to its accountant were incorrect. See Treas. Reg. § 1.6664-4(c)(1)(ii) ("[T]he advice must not be based upon a representation or assumption which the taxpayer knows, or has reason to know, is unlikely to be true . . . .").

Transsupport also argues it acted with reasonable cause and good faith because it was audited twice and was not required to change its accounting method or compensation system. Transsupport's prior audit results do not show error by the Tax Court. Transsupport cites cases indicating that the Tax Court may find a taxpayer acted with reasonable and good faith where a prior audit permitted a certain tax treatment, see Tesar v. Comm'r, 73 T.C.M. (CCH) 2709, 1997 WL 220396, at *7 (1997); Bangs v. Comm'r, 91 T.C.M. (CCH) 1063, 2006 WL 1073429, at *9 (2006), but that does not mean that the Tax Court must make such a finding. The inquiry is fact-specific, and no single factor is dispositive. Treas. Reg. § 1.6664-4(b). Here, the Tax Court's finding that Transsupport had not acted with reasonable cause and good faith had sufficient support from the evidence in the record, including Foote's sophistication as a taxpayer -- as evinced by his ability to gift Transsupport stock to his sons while minimizing gift taxes -- and Foote's admissions in the sales literature, which indicate he knew that Transsupport's inventory was worth more than reported and that his sons were paid an unreasonable rate. See Transsupport II, 2016 WL 6900913, at *3, *7, *13.

## V. Conclusion

We affirm.

- 19 -