# United States Court of Appeals
## For the First Circuit

No. 18-1129

UNITED STATES,

Appellee,

v.

ISHMAEL DOUGLAS,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MAINE

[Hon. Jon D. Levy, U.S. District Judge]

Before

Lynch, Stahl, and Thompson,
Circuit Judges.

J. Hilary Billings on brief for appellant.
Benjamin M. Block, Assistant United States Attorney, and
Halsey B. Frank, United States Attorney, on brief for appellee.

October 12, 2018

**LYNCH**, **Circuit Judge**.  This direct appeal after entry of a guilty plea raises important questions under federal criminal law, particularly whether it is appropriate to use the categorical approach in determining what is a "crime of violence" under 18 U.S.C. § 924(c)(3)(b).

Ishmael Douglas entered a conditional plea of guilty to charges of conspiracy to commit a Hobbs Act robbery, in violation of 18 U.S.C. § 1951(a), and of using, carrying, or brandishing a firearm in relation to a "crime of violence," in violation of 18 U.S.C. § 924(c)(1).  Douglas now appeals the district court's denial of his motion, before the plea, to dismiss a portion of the latter charge, on the ground that the residual clause at 18 U.S.C. § 924(c)(3)(B) is unconstitutionally vague under Johnson v. United States, 135 S. Ct. 2551 (2015), and Sessions v. Dimaya, 138 S. Ct. 1204 (2018).  See United States v. Williams, 179 F. Supp. 3d 141 (D. Me. 2016).  The district court did not reach this issue in denying the motion.  Id.

After de novo review, we conclude that § 924(c)(3)(B) is not, as Douglas argues, void for vagueness.  That is because the statute reasonably allows for a case-specific approach, considering real-world conduct, rather than a categorical approach, and because Douglas's conspiracy to commit a Hobbs Act robbery qualifies as a "crime of violence."  We largely agree with the reasoning of the Second Circuit in a similar case, United

States v. Barrett, 903 F.3d 166 (2d Cir. 2018), save for one point, and with the result and much of the reasoning in Ovalles v. United States, No. 17-10172, 2018 WL 4830079 (11th Cir. Oct. 4, 2018) (en banc). We affirm.

## I. Background

### A. Facts

We describe the background facts of the underlying offense, accepted by both parties,[1] because they are relevant to a case-specific, real-world analysis of a "crime of violence" under § 924(c)(3)(b).

In August 2014, Douglas, along with Kourtney Williams, Victor Lara, Jr., and Heidi Hutchinson, conspired to commit a home invasion robbery in Minot, Maine. Williams, Lara, and Hutchinson began planning the robbery on July 26; Douglas joined the conspiracy on either August 1 or August 2.[2] The conspirators targeted the house of a person they believed to be engaged in

---

[1] With one exception, discussed in footnote 2, Douglas accepted the prosecution version of the facts in his brief. He did not object to the facts in the revised Presentence Report.

[2] At his change of plea hearing, Douglas told the district court that he joined the conspiracy as the group was driving to Minot on August 2, rather than the day before as the prosecution claimed. However, mirroring the prosecution's assertion, Douglas's own brief for this court states that he joined the conspiracy on August 1. In any event, the precise date is not relevant to our analysis, because it is settled that Douglas joined the conspiracy before the armed robbery.

illegal drug trafficking, in order to steal Percocet (oxycodone) pills and proceeds from the drug trafficking.

On August 2, Hutchinson drove the other conspirators to the targeted house in Minot and waited outside after dropping them off. Lara, Williams, and Douglas, in partial disguise, entered the house by breaking a glass sliding door. They yelled "get down," "DEA," and "police." Williams carried a pistol; Lara had a crowbar. Douglas found in a bedroom a 9-millimeter Beretta handgun with an extended clip, which he took and brandished during the robbery.

The conspirators found three men inside the house, whom they tried to secure by placing zip ties around the men's hands.[3] But the zip ties were not large enough for the task.

Lara assaulted the three men with a crowbar. First, Lara beat and bloodied one man, striking him in the back, shoulders, and head with a crowbar because he did not look away from the conspirators when told to do so. Lara later beat him again with a crowbar when he said that he did not know the combination to a safe in the house. Lara beat a second man in the back, shoulders, arms, and thighs with a crowbar after he was found hiding under a futon. Lara also beat the third man in the face, legs, and back.

_____

[3] The government refers to all victims here as male regardless of gender, and we will do the same.

- 4 -

Douglas and Williams also threatened the three men several times with firearms. The conspirators demanded that the men, at gunpoint, give them "the shit" and the combination to the safe. Douglas also forced the first man to the garage, with Douglas holding his hand on the man's neck and pressing a gun to his head. After the man stated that there was nothing in the garage, Lara told Douglas to shoot him, but Douglas did not do so. One of the conspirators also dragged that man down a hallway, holding him in a headlock.

After unsuccessfully searching the house for oxycodone and money, Williams and Lara then forced two of the men outside at gunpoint. The first man -- believing he was about to be shot -- fled to a neighbor's house. He saw the conspirators run to Hutchinson in the waiting SUV and drive away. The third man escaped and called the police from another neighbor's house.

The conspirators did not find any pills or proceeds. They did steal a video game console, six to eight ounces of marijuana, and the Beretta pistol that Douglas had found, taken, and brandished during the robbery. Police, acting with a search warrant for the house, found the crowbar and zip ties used in the robbery. DEA agents later found items at the house that the conspirators had unsuccessfully sought: 147 fifteen-milligram and 504 thirty-milligram oxycodone pills, 376 grams of powder cocaine, thirty-three pounds of marijuana, and more than $6,000 in cash.

Later, pursuant to a warrant, the police searched a storage unit used by the conspirators and found the two guns brandished in the robbery.

B.    Procedural History

On April 7, 2015, Douglas was charged with four counts of a seven count indictment: conspiracy to possess with intent to distribute oxycodone, in violation of 21 U.S.C. § 846 (Count One); conspiracy to commit a Hobbs Act robbery, in violation of 18 U.S.C. § 1951(a) (Count Two); possession of a firearm as a convicted felon, in violation of 18 U.S.C. § 922(g)(1) (Count Five); and knowingly using, carrying, and brandishing a firearm during a crime of violence, in violation of 18 U.S.C. § 924(c)(1) (Count Six).

Douglas moved to dismiss the portion of Count Six containing "the allegation that he knowingly used, carried, and brandished a firearm during and in relation to a crime of violence."  In effect, he claimed that a conspiracy to commit a Hobbs Act robbery does not qualify as a "crime of violence" under 18 U.S.C. § 924(c).

The district court denied this motion in an order issued on April 15, 2016.  Williams, 179 F. Supp. 3d at 155.  Taking a categorical approach to the "force clause"[4] at § 924(c)(3)(A), the

---

[4]    Some courts instead refer to this clause as the "elements clause."  See, e.g., United States v. Armour, 840 F.3d 904, 907 (7th Cir. 2016).

- 6 -

district court determined that "a conspiracy to commit a Hobbs Act robbery may serve as a predicate 'crime of violence' under the 'force clause.'"  Id.  The district court did not reach Douglas's argument that § 924(c)(3)(B), the residual clause,[5] is void for vagueness in light of Johnson.  Id.

Douglas then entered a conditional guilty plea to Counts Two and Six, reserving his right to appeal the district court's denial of the motion to dismiss a portion of Count Six.  At the Rule 11 hearing, Douglas affirmed that he understood the basis for the charges.  Defense counsel acknowledged that the "admissible part of the evidence would permit a properly instructed jury to determine beyond a reasonable doubt" that Douglas had committed the charged offenses.

The district court sentenced Douglas to 108 months' imprisonment: twenty-four months on Count Two and eighty-four months on Count Six, to be served consecutively.  Douglas appealed the denial of his motion to dismiss.

## II.  Discussion

We address three substantive issues.  First, we consider Douglas's assertion that the government has waived its key argument on appeal that the use of the term "crime of violence" in

---

    [5]    Some courts instead refer to this clause as the "risk-of-force clause."  See, e.g., United States v. St. Hubert, 883 F.3d 1319, 1320 (11th Cir. 2018).

§ 924(c)(3)(B) allows for a case-specific rather than a categorical approach, by not asserting it in the district court.[6] The government acknowledges it made a concession, but argues it was not a waiver. Second, we reach the merits of Douglas's argument that, under Johnson and Dimaya, the residual clause at § 924(c)(3)(B) is void for vagueness. The government does not defend the district court's alternate rationale or contend that the conspiracy charged would qualify as a "crime of violence" under the force clause at § 924(c)(3)(A), so we do not address this point.[7] Third, because we find that § 924(c)(3)(B) is not void for vagueness, we consider -- by a case-specific, real-world approach -- whether Douglas's particular conspiracy to commit a Hobbs Act robbery qualifies as a "crime of violence" under the residual clause. We affirm the denial of the motion to dismiss.

We review de novo the denial of Douglas's motion to dismiss a portion of Count Six of his indictment, as Douglas's appeal challenges the constitutionality of a federal statute. See,

---

[6] As discussed later, a categorical or modified categorical approach considers an "idealized ordinary case" of the crime charged; a case-specific approach considers a defendant's "real-world conduct." Johnson, 135 S. Ct. at 2557-58.

[7] The government explicitly "does not adopt the district court's holding that conspiracy to commit Hobbs Act robbery constitutes a crime of violence under the force clause . . . . [T]he Department of Justice's position is that a conspiracy offense does not have 'as an element the use, attempted use, or threatened use of physical force against the person or property of another.'"

e.g., United States v. Hussein, 351 F.3d 9, 14 (1st Cir. 2003). And we also review de novo the proper understanding and application of "crime of violence" in the residual clause. See, e.g., United States v. Turner, 501 F.3d 59, 67 (1st Cir. 2007).

A.   Concession and Waiver

We turn to the intertwined issues of concession and waiver.  At the district court proceedings, which occurred before the Supreme Court's decision in Dimaya, the government acknowledged that § 924(c)(3)(B) "involves a risk-based analysis of the 'ordinary case' of a predicate offense."  Douglas argues, albeit solely in his reply brief, that the government has therefore waived its argument that § 924(c)(3)(B) allows for a case-specific, real-world approach rather than a categorical approach. The government asserts that its acknowledgement of the categorical approach in the district court should be viewed at most as a concession made for purposes of argument.  Admittedly, the line between waiver and concession is a hazy one.  See, e.g., United States v. Torres-Rosario, 658 F.3d 110, 116 (1st Cir. 2011) ("Courts are not always consistent in their use of the term waiver . . . . [A]n explicit concession can waive both existing and yet-to-be-recognized rights." (emphasis in original)).  Whether the government's acknowledgment in the district court is best viewed as a concession or a waiver, the situation here -- where an intervening Supreme Court case, Dimaya, has shifted the relevant

legal landscape -- leads us to conclude that we should review the substantive issue.

The law is clear that a "concession by either party in a criminal case as to a legal conclusion is not binding on an appellate court."  United States v. Sanchez-Berrios, 424 F.3d 65, 81 (1st Cir. 2005); accord United States v. Borrero-Acevedo, 533 F.3d 11, 15 n.3 (1st Cir. 2008).  There are at least three "pertinent considerations" in determining whether we should address an earlier concession by a party:

> 1) whether the issue is recurrent so that decision would give guidance to the district courts, 2) whether it would be unseemly to accept, even arguendo, a mistaken legal proposition and reason from it to decide the case, and 3) whether the issues are technical and complex and not explored carefully in existing decisions so that adversary briefing would be critical.

United States v. Mescual-Cruz, 387 F.3d 1, 8 n.2 (1st Cir. 2004). Each consideration leads us to bypass the so-called concession and reach the merits.  Indeed, the opinion in Dimaya alone would lead us to this same conclusion.

First, this is a recurring issue.  Section 924(c)(3)(B) has come up numerous times in district courts in this circuit, and in several cases in the past few months alone.[8]  A determination

---

[8]    At least three district court cases in this circuit have considered § 924(c)(3)(B) in light of the Supreme Court's decision in Dimaya.  See LiCausi v. United States, No. 16-CV-279-JD, 2018 WL 4054905, at *3 (D.N.H. Aug. 23, 2018) (holding that

on the substantive issues in this appeal would provide guidance to district courts in this unsettled area of law. Second, it would be "unseemly" to hold the government to its earlier position when an intervening Supreme Court case, Dimaya, substantially changed this area of law. Third, the proper approach to the residual clause at § 924(c)(3)(B) is a technical issue that has arisen in current form only after Dimaya, and merits our serious evaluation.

In the interests of completeness, we also address, and reject, Douglas's waiver argument. Waiver raises similar considerations as concession. Waiver is usually "treated as an 'intentional,' and therefore permanent, abandonment of a position." Torres-Rosario, 658 F.3d at 115.[9]

---

"§ 924(c)(3)(B) is unconstitutionally vague"); United States v. Rossetti, No. CR 99-10098-RGS, 2018 WL 3748161, at *3 (D. Mass. Aug. 7, 2018) (same); Soto-Cosme v. United States, 320 F. Supp. 3d 350, 353 (D.P.R. 2018) (noting, but avoiding, the "void-for-vagueness" challenge).

[9] Waiver doctrine can be applied against any party: "in fairness, what is sauce for the defendant's goose is sauce for the government's gander." United States v. Caraballo-Cruz, 52 F.3d 390, 393 (1st Cir. 1995). Waiver doctrine, therefore, "has been applied against the government in criminal cases, where appropriate." United States v. Carrasco-De-Jesus, 589 F.3d 22, 26 (1st Cir. 2009). Though we are under no obligation "to do the government's homework," United States v. Vega Molina, 407 F.3d 511, 524 (1st Cir. 2005), "we have discretion to overlook waiver by the government in a criminal case when circumstances justify us in doing so." Carrasco-De-Jesus, 589 F.3d at 26 n.1; see generally Torres-Rosario, 658 F.3d at 116; United States v. Moran, 393 F.3d 1, 11 (1st Cir. 2004).

We do not think there was an intentional abandonment by the government, and so there was no waiver.[10] Regardless, we would in any event choose to reach the issues, and we do not "religiously hold[] waiver against the Government" when fairness dictates otherwise. Dimott v. United States, 881 F.3d 232, 239 (1st Cir. 2018) (quotation marks omitted). There is no unfairness in reaching the merits argument but there would be in not reaching it. This is not a case where the government seeks the proverbial second bite at the apple due to lack of due diligence or "any gamesmanship before the district court." Id. Nor is it one where "a prosecutor attempts to rely on fleeting references to unsubstantiated conclusions." Caraballo-Cruz, 52 F.3d at 393. The government has been forthright about its changed position and the reasons underlying this change.

Our view is consistent with that of several of our sister circuits. The Second Circuit recently considered the government's changed position regarding a case-specific, real-world approach, and held that the residual clause allowed for this approach.

---

[10] Further, Douglas has likely waived his own argument on the issue of the government's waiver, by not mentioning this somewhere in his primary brief but only in his reply brief. "[A]rguments developed for the first time in a reply brief are waived." Small Justice LLC v. Xcentric Ventures LLC, 873 F.3d 313, 323 n.11 (1st Cir. 2017); accord Transupport, Inc. v. Comm'r of Internal Revenue, 882 F.3d 274, 281 n.4 (1st Cir. 2018); Irving Tanning Co. v. Kaplan, 876 F.3d 384, 392 n.7 (1st Cir. 2017).

- 12 -

Barrett, 903 F.3d at 184.[11]  The Eleventh Circuit, en banc, also considered the government's new position and held that "§ 924(c)(3)(B) prescribes a conduct-based approach, pursuant to which the crime-of-violence determination should be made by reference to the actual facts and circumstances underlying a defendant's offense."  Ovalles, No. 17-10172, 2018 WL 4830079, at *2.  And the D.C. Circuit and Fifth Circuit both indicated that only circuit precedent vitiated the need for consideration of the government's argument on a case-specific, real-world approach. United States v. Eshetu, 898 F.3d 36, 37 (D.C. Cir. 2018) (per curiam) ("Whatever the clean-slate merits of the government's construction, we as a panel are not at liberty to adopt [a case-specific approach]: circuit precedent demands a categorical approach . . . ."); United States v. Davis, 903 F.3d 483, 485 (5th Cir. 2018) ("[T]he Government argues we can, and should, adopt a new 'case specific' method when applying the residual clause . . . .  Regardless of whether Dimaya would otherwise permit us to do so, we do not find a suggestion by a minority of justices in that case sufficient to overrule our prior precedent.").

---

[11]    The government's supplemental brief in Barrett made similar arguments to the government's brief here, as did the government's en banc brief in Ovalles.

B.    The Merits of a Case-Specific Approach versus a Categorical
      Approach to § 924(c)(3)(B)

        Douglas asserts that the residual clause at § 924(c)(3)(B) is void for vagueness under the reasoning of Johnson and Dimaya.  In relevant part, this clause reads:

> (3)  For purposes of this subsection the term "crime of violence" means an offense that is a felony and— . . .
> (B)  that by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense.

18 U.S.C. § 924(c)(3)(B).

        After laying out pertinent Supreme Court precedent, we consider the text of § 924(c)(3)(B).  We find that the text of § 924(c)(3)(B) can and should be reasonably construed as allowing a case-specific approach.  We next consider the statute's context.  Because § 924(c)(3)(B) requires consideration of a contemporaneous offense rather than a prior conviction, this residual clause does not raise either the practical or the Sixth Amendment right-to-trial concerns that led the Supreme Court to adopt the categorical approach in Taylor v. United States, 495 U.S. 575 (1990).  See also Descamps v. United States, 570 U.S. 254 (2013); James v. United States, 550 U.S. 192 (2007).  We then consider constitutional avoidance, because, if we were to apply a categorical approach, there could be vagueness problems.

- 14 -

Unlike some other circuits, our circuit has not held definitively that either the categorical or the case-specific approach applies to the residual clause at § 924(c)(3)(B).[12] And so we have no binding precedent. In Turner, we held without direct reference to a categorical or case-specific approach that conspiracy to commit a Hobbs Act robbery was a crime of violence under § 924(c)(3)(B). Turner, 501 F.3d at 67. The law of the circuit rule -- under which "we are bound by a prior panel decision, absent any intervening authority," United States v. Grupee, 682 F.3d 143, 149 (1st Cir. 2012) -- does not bind us here.[13] See San Juan Cable LLC v. Puerto Rico Tel. Co., 612 F.3d 25, 33 (1st Cir. 2010); United States v. Malouf, 466 F.3d 21, 26-27 (1st Cir. 2006).

i. Supreme Court Precedent

The Supreme Court first required that the "categorical approach" be used to make a determination about a prior state

---

[12] By contrast, we have held in several cases that a categorical approach properly applies to the force clause at § 924(c)(3)(A). United States v. Cruz-Rivera, No. 16-1321, 2018 WL 4378173, at *1 (1st Cir. Sept. 14, 2018); United States v. Taylor, 848 F.3d 476, 491 (1st Cir. 2017).

[13] It is true that some district courts in our circuit have held, or assumed, that the categorical approach applies. See, e.g., Rossetti, No. CR 99-10098-RGS, 2018 WL 3748161, at *2 ("The government's position until recently has been that § 924(c)(3)(B) requires a categorical approach — a conclusion that . . . the First Circuit has never definitively held but that the lower district courts had regularly assumed to be the case."). But of course, such decisions are not precedent for this court.

conviction in Taylor, 495 U.S. at 602, which turned on the proper understanding of the definition of burglary in the Armed Career Criminal Act (ACCA), in a portion of the statute used to enhance sentences for prior offenses.[14] The Court concluded that ACCA referred to "burglary" in a general sense and therefore required a trial court "to look only to the fact of conviction and the statutory definition of the prior offense." Id. In justifying this, the Court especially worried about the "practical difficulties" of a case-specific analysis for prior convictions. It also was concerned with possibly "abridging [the Sixth Amendment] right to a jury trial." Id. at 601. The Court extended the categorical approach to the residual clause of ACCA in James, and significantly added the "ordinary case" component to the categorical analysis. 550 U.S. at 208 ("[T]he proper inquiry is whether the conduct encompassed by the elements of the offense, in

---

[14]     The definition at issue in the case was this:
          (B)  the term "violent felony" means any
               crime punishable by imprisonment
               for a term exceeding one year ...
               that—
          (i)  has as an element the use,
               attempted use, or threatened
               use of physical force against
               the person of another; or
          (ii) is burglary, arson, or
               extortion, involves use of
               explosives, or otherwise
               involves conduct that presents
               a serious potential risk of
               physical injury to another.
     18 U.S.C. § 924(e)(2)(B).

the ordinary case, presents a serious potential risk of injury to another.").

In Johnson, which overruled James, the Supreme Court held that the definition of "violent felony" in the residual clause of ACCA was unconstitutionally vague. 135 S. Ct. at 2555-57. ACCA's residual clause defined a violent felony, in part, as a felony that "involves conduct that presents a serious potential risk of physical injury to another." 18 U.S.C. § 924(e)(2)(B)(ii).

The Court held that "[t]wo features of the residual clause conspire[d] to make it unconstitutionally vague." Johnson, 135 S. Ct. at 2557. First, "the residual clause leaves grave uncertainty about how to estimate the risk posed by a crime," because the categorical approach "ties the judicial assessment of risk to a judicially imagined 'ordinary case' of a crime, not to real-world facts or statutory elements." Id. The Court noted "how speculative (and how detached from statutory elements)" considering an "idealized ordinary case of a crime" can become. Id. at 2557-58. Second, "the residual clause leaves uncertainty about how much risk it takes for a crime to qualify as a violent felony." Id. at 2558. And "[b]y combining indeterminacy about how to measure the risk posed by a crime with indeterminacy about how much risk it takes for the crime to qualify as a violent felony, the residual clause produces more unpredictability and arbitrariness than the Due Process Clause tolerates." Id.

- 17 -

In _Dimaya_, an alien challenged a deportation order based on a state conviction for first-degree burglary, which immigration officials found was a "crime of violence" under the federal criminal code's residual clause at 18 U.S.C. § 16(b), explicitly incorporated by Congress into the Immigration and Nationality Act. 8 U.S.C. § 1101(a)(43)(F). In relevant part, this residual clause defined "crime of violence" using the same language as § 924(c)(3)(B): a "crime of violence" is a felony "that, by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense." 18 U.S.C. § 16(b). The government had conceded that the categorical approach applied. _Dimaya_, 138 S. Ct. 1204, 1217 (2018).

The Supreme Court determined that the "straightforward application" of _Johnson_ dictated the result in _Dimaya_. _Id._ at 1213. The same two features -- an "ordinary case" analysis and uncertainty about the sufficient degree of risk -- combined in "the same constitutionally problematic way" to make the residual clause impermissibly vague. _Id._

The Supreme Court majority in _Dimaya_ also referenced the Sixth Amendment right-to-trial concerns that led to the initial adoption of the categorical approach in _Taylor_. _See_ _Dimaya_, 138 S. Ct. at 1217 (noting that the Supreme Court required a categorical approach "in part to avoid . . . Sixth Amendment

- 18 -

concerns" (quotation marks and citation omitted)). In dissent, Justice Thomas, joined by Justices Kennedy and Alito, pointed out that the "categorical approach was never really about the best reading of the text." Id. at 1256 (Thomas, J., with Kennedy, Alito, JJ., dissenting). Justice Thomas suggested, instead, that the "Court adopted that approach to avoid a potential Sixth Amendment problem with sentencing judges conducting minitrials to determine a defendant's past conduct." Id. So all justices in Dimaya recognized that the categorical approach was adopted at least in part to avoid potential Sixth Amendment problems about how to characterize prior convictions.[15]

Importantly, in both Dimaya and Johnson, the Supreme Court dismissed the notion that uncertainty as to risk evaluation of what constitutes a crime of violence was a problem by itself: "[W]e do not doubt the constitutionality of laws that call for the application of a qualitative standard such as 'substantial risk' to real-world conduct; the law is full of instances where a man's

---

[15] We are aware that the Supreme Court has granted certiorari, vacated judgment, and remanded for further consideration in light of Dimaya in several cases involving convictions under § 924(c)(3)(B). See United States v. Odum, 878 F.3d 508 (6th Cir. 2017), cert. granted, judgment vacated sub nom. Frazier v. United States, No. 17-8381, 2018 WL 1640324 (U.S. Oct. 9, 2018); Manners v. United States, No. 17-1171, 2017 WL 3613308 (6th Cir. Aug. 22, 2017), cert. granted, judgment vacated, No. 17-8035, 2018 WL 1278398 (U.S. Oct. 1, 2018); United States v. Jackson, 865 F.3d 946 (7th Cir. 2017), cert. granted, judgment vacated, 138 S. Ct. 1983 (May 14, 2018). This does not change our analysis here.

fate depends on his estimating rightly . . . some matter of degree[.]"  Dimaya, 138 S. Ct. at 1214 (quoting Johnson, 135 S. Ct. at 2561) (brackets and ellipsis in original).

ii.  The Text of § 924(c)(3)(B)

Douglas argues that § 924(c)(3)(B)'s text unambiguously requires a categorical, ordinary-case approach.  We disagree, and find that statutory language allows for a case-specific approach.

When determining the meaning of a statutory provision that is not defined in the statute, "we look first to its language, giving the words used their ordinary meaning."  Moskal v. United States, 498 U.S. 103, 108 (1990) (quotation marks and citation omitted); see In re Hill, 562 F.3d 29, 32 (1st Cir. 2009) ("We assume that the words Congress chose, if not specially defined, carry their plain and ordinary meaning.").

Douglas argues that the "by its nature" language requires a categorical approach.  The word "nature" is not defined in the statute.  In ordinary use, "nature" means a "normal and characteristic quality," Webster's Third New International Dictionary 1507 (2002), or "the basic or inherent features, character, or qualities of something," Oxford Dictionary of English 1183 (3d ed. 2010).  In the context of applying § 924(c)(3)(B), this "something" clearly must refer to the predicate offense charged.  But these straightforward dictionary definitions do not answer the key question here: whether the

- 20 -

offense whose "basic or inherent features, character, or qualities" are considered is the <u>particular</u> real-world conduct of the predicate offense charged or, instead, an "ordinary," idealized, or generic example of that same offense. See <u>Barrett</u>, 903 F.3d at 182. As the Supreme Court has noted, "in ordinary speech words such as 'crime,' 'felony,' 'offense,' and the like sometimes refer to a generic crime . . . and sometimes refer to the specific acts in which an offender engaged on a specific occasion." <u>Nijhawan</u> v. <u>Holder</u>, 557 U.S. 29, 33-34 (2009); <u>see</u> <u>Mathis</u> v. <u>United States</u>, 136 S. Ct. 2243, 2252 (2016) (noting that language like "offense . . . committed" indicated Congress's intent that "judges . . . look into the facts of prior crimes"); <u>United States</u> v. <u>Hayes</u>, 555 U.S. 415, 426 (2009) (holding that a statute with the phrase "offense . . . committed by a current or former spouse" allowed for case-specific consideration).

Furthermore, although Douglas does not raise this issue, the government also points out that the term "involves" in the residual clause is used in several provisions in the Comprehensive Crime Control Act of 1984 that require looking into a defendant's underlying conduct rather than a hypothetical or idealized offense. See, e.g., Pub. L. No. 98-473, § 4243, 98 Stat. 1837, 2059 (Oct. 12, 1984) (changing the requisite burden of proof for the release of "a person found not guilty only by reason of insanity of an offense involving bodily injury to, or serious

- 21 -

damage to the property of, another person, or <u>involving</u> a substantial risk of such injury or damage" (emphasis added)); <u>id.</u> at § 502, 98 Stat. 2068 (setting sentences for drug offenses "involving" specific types and quantities of illegal drugs). "Involves," by itself, does not necessarily suggest either a categorical or a case-specific approach. As to § 924(c)(3)(B), it is plausible that "by its nature" refers to the real-world conduct of a particular offense, and that "involves" also refers to that same conduct. See <u>Ovalles</u>, 17-10172, 2018 WL 4830079, at *14 ("[W]e simply aren't convinced that the phrase 'by its nature' requires application of the categorical approach here.")

Douglas asserts that this textual understanding is foreclosed by the Supreme Court's interpretation of the nearly identically worded provision in <u>Dimaya</u>, where the plurality required a categorical approach. In his reply brief, Douglas argues that Justice Gorsuch, in a concurrence, "acknowledged that the categorical approach was appropriately employed," so, according to Douglas, this approach is therefore required for § 924(c)(3)(B). This is incorrect on both counts.

A four-justice plurality suggested in <u>Dimaya</u> that the text of § 16(b) was "[b]est read" as "demand[ing] a categorical approach." 138 S. Ct. at 1217. Even assuming for the sake of argument that this statement applies to the distinct context of

§ 924(c)(3)(B),[16] there was no holding by a majority of the court that a categorical approach was required by the text of this provision. And the Supreme Court has held in several cases that "[w]hen a fragmented Court decides a case and no single rationale explaining the result enjoys the assent of five justices, 'the holding of the Court may be viewed as that position taken by those Members who concurred in the judgment on the narrowest grounds.'" Marks v. United States, 430 U.S. 188, 193 (1977) (quoting Gregg v. Georgia, 428 U.S. 153, 169 n.15 (1976) (opinion of Stewart, Powell, and Stevens, JJ)).

Justice Gorsuch, who concurred and was the narrowest vote in the majority,

> proceeded on the premise that the Immigration and Nationality Act, as it incorporates § 16(b) of the criminal code, commands courts to determine the risk of violence attending the ordinary case of conviction for a particular crime . . . because no party before us has argued for a different way to read these statutes in combination; because our precedent seemingly requires this approach; and because the government itself has conceded (repeatedly) that the law compels it.

---

[16]    The plurality said nothing about § 924(c)(3)(B) in Dimaya. Nor do we assume that similar text across the United States code must always be interpreted in exactly the same way: context and commensurate congressional intent matter. There are clearly exceptions to any presumption that Congress uses the same term or language in precisely the same way across different statutes. As will be discussed, the general definition in § 16(b) is contextually distinct from § 924(c)(3)(B).

_Dimaya_, 138 S. Ct. at 1232 (Gorsuch, J., concurring in part and concurring in judgment). Justice Gorsuch then suggested a willingness to consider, "in another case," the textual question of whether "precedent and the proper reading of language" meant that the categorical approach, or another approach, must apply. _Id._ at 1233.  While Justice Gorsuch accepted the government's concession in _Dimaya_ and noted the lack of "adversarial testing" or briefing of an alternative approach in that case, _id._ at 1232, he did not determine that the text of § 16(b) required a categorical approach.  And he certainly did not determine anything about the text of the contextually distinct § 924(c)(3)(B).

When the plurality dismissed the possible application of the case-specific approach to § 16(b), these justices had already stated that taking a case-specific approach would create "Sixth Amendment concerns."  _Id._ at 1217 (quoting _Descamps_, 570 U.S. at 267).  But for § 924(c)(3)(B), Sixth Amendment concerns around the right to trial do not arise because a contemporaneous offense rather than a prior conviction is considered.  Thus, when considering the text of § 16(b), the plurality opinion addressed a constitutional context distinct from this case.  And as noted, the government had already conceded that the categorical approach applied.  Douglas's textual argument is unavailing.

### iii. The Context of § 924(c)(3)(B)

We turn now to the context of § 924(c)(3)(B). As a preliminary matter, nothing from Congress suggests a preference for applying the categorical approach to § 924(c)(3)(B). Indeed, this residual clause, in exactly the same language as today, was in place before the Supreme Court applied the categorical approach for the first time in 1990. 18 U.S.C. § 924(e)(2012); Taylor, 495 U.S. 575. Thus, Congress could not have demonstrated a preference for a judicial approach that did not yet exist when the statute was passed. Instead, the application of the categorical approach to aspects of federal recidivist criminal statutes is a judicial construct designed to avoid constitutional and practical concerns raised by particular context, rather than a choice dictated by Congress.

The context of § 924(c)(3)(B) clearly distinguishes it from the textually similar provisions at issue in Dimaya and Johnson. The Supreme Court in Dimaya and Johnson dealt with statutes requiring judicial consideration of prior convictions in subsequent proceedings. In contrast, § 924(c)(3)(B) applies only to a predicate offense of a pending § 924(c)(1)(A) charge, meaning that the predicate offense and the § 924(c)(3)(B) enhancement are considered at the same time. The Supreme Court has not yet applied the categorical approach to a residual clause that "defines a predicate offense for a crime of pending prosecution," Barrett,

903 F.3d at 181, rather than to a residual clause that defines a qualifying predicate offense based on a prior conviction.

This is a crucial distinction. At its core, the categorical approach is a thoughtful judicial construct designed for a particular context: the judicial consideration, under federal statutes, of prior convictions, often by different tribunals. As discussed, the Supreme Court fashioned and refined the categorical approach both for practical and constitutional reasons that are specific to the consideration of a prior conviction. See, e.g., Taylor, 495 U.S. at 601 (noting the "practical difficulties and potential unfairness of a factual approach" when considering a prior conviction). Despite Douglas's argument to the contrary, these reasons for the categorical approach do not exist in the distinct context of § 924(c)(3)(B).

As to practical issues, the situation under § 924(c)(3)(B) is different from one in which a court must consider prior convictions "adjudicated by different courts in proceedings that occurred long before the defendant's [present] sentencing." United States v. Robinson, 844 F.3d 137, 142 (3d Cir. 2016). For the prior conviction, the earlier court did not have to determine, in finding guilt, whether the offense constituted a crime of violence unless the particular statute happened to require it. In addition, a prior conviction could not only be from a different tribunal, but could be from many years ago. As an illustrative

example, in the Supreme Court's initial adoption of the categorical approach in Taylor, the underlying prior convictions had been adjudicated in state courts in Missouri in 1963 and 1971, whereas the defendant's guilty plea to the federal case was in 1988. 495 U.S. at 578 & n.1. Such an inquiry clearly can be fraught with uncertainty, and may even involve some degree of implicit second-guessing of prior convictions by other tribunals. But this issue simply does not arise when considering a contemporaneous offense as in § 924(c)(3)(B).

The application of § 924(c)(3)(B) to the real-world conduct described in a pending charge means that the facts concerning the relevant predicate crime (and whether that amounts to a crime of violence) will be in front of a jury, if a case goes to trial, or will be accepted by a defendant like Douglas in a plea agreement. See Ovalles, No. 17-10172, 2018 WL 4830079, at *14 (noting "[t]he 'utter impracticability' that Taylor, Johnson, and Dimaya identified . . . simply isn't an issue" because "the crimes are typically (as here) charged in the same indictment, and if they are tried, they are considered by the same jury."); St. Hubert, 883 F.3d at 1335 (noting that in § 924(c) cases, there will be "a contemporaneous federal crime charged in the same indictment and . . . an already developed factual record"). Consideration of the facts underlying a pending charge steers clear of the Supreme Court's understandable concern about prior

convictions with the "impracticability of requiring a sentencing court to reconstruct, long after the original conviction, the conduct underlying that conviction." Johnson, 135 S. Ct. at 2562; see Dimaya, 138 S. Ct. at 1218.

Douglas argues further that a case-specific approach would be unworkable and, in his words, lead to "absurd results." However, Douglas provides no evidence of such a problem. Courts around the country have succeeded at this task in the sentencing context. Numerous federal criminal laws, like § 924(c)(3)(B), "require gauging the riskiness of conduct in which an individual defendant engages on a particular occasion." Johnson, 135 S. Ct. at 2561; see Dimaya, 138 S. Ct. at 1215 ("[T]he point is not that such a non-numeric standard [like substantial risk] is alone problematic."). On the whole, it is at least as practical to allow a jury to parse carefully between crimes based on specific real-world conduct rather than, under a categorical approach, to force judges to be willfully blind to particular facts and thus to go "down the rabbit hole . . . to a realm where we must close our eyes as judges to what we know as men and women." United States v. Davis, 875 F.3d 592, 595 (11th Cir. 2017).

The Supreme Court has suggested that such a fact-specific approach, "deal[ing] with the actual, not with an imaginary condition other than the facts," can create more predictability that less fact-bound inquires. Johnson, 135 S. Ct.

- 28 -

at 2561 (quoting Int'l Harvester Co. of Am. v. Kentucky, 234 U.S. 216, 223 (1914)).  Juries have the ability to evaluate and understand real-world conduct.  And in § 924(c)(3)(B), there is no link of the "substantial risk" language to a "confusing list of examples," id., nor is there any other particularly confusing factor distinguishing § 924(c)(3)(B) from other laws that require juries to consider real-world conduct.

Beyond these practical distinctions, the difference between evaluating a prior conviction and evaluating an alleged predicate crime charged contemporaneously in the same indictment is important with regard to the Sixth Amendment right-to-trial concerns that motivated the categorical approach.  In Dimaya, a plurality suggested that taking a case-specific approach to § 16(b) would "merely ping-pong us from one constitutional issue to another," because the categorical approach was imposed in part to "avoid[] the Sixth Amendment concerns that would arise from sentencing courts' making findings of fact that properly belong to juries."  Dimaya, 138 S. Ct. at 1217 (quoting Descamps, 570 U.S. at 267); see Apprendi v. New Jersey, 530 U.S. 466, 490 (2000) (holding that "any fact that increases the penalty for a crime beyond the . . . statutory maximum must be submitted to a jury").

Here, because the residual clause at § 924(c)(3)(B) requires a consideration of a contemporaneous predicate offense rather than a past conviction, the finding of fact would be made

by a jury (or stipulated in a plea agreement), thus raising no Sixth Amendment problem.  See Ovalles, No. 17-10172, 2018 WL 4830079, at *15 (noting no Sixth Amendment issues when taking a conduct-specific approach to § 924(c)).  A defendant like Douglas has the chance to contest the relevant facts either at trial or in plea negotiations.  If for whatever reason a defendant cannot or will not accept the prosecution's version of the facts, either in whole in or part, he or she maintains the constitutional right to contest these facts at trial in front of a jury.  By considering a contemporaneous offense, then, a "defendant suffers no prejudice because the court is not finding any new facts which are not of record in the case before it."  Robinson, 844 F.3d at 143.  Here, the district court had the relevant facts concerning all charges against Douglas, and Douglas had the right to contest them as he saw fit.

iv.  Constitutional Avoidance

If we were to take a categorical approach to § 924(c)(3)(B), there could be constitutional problems of vagueness after Dimaya, given that this approach would layer the two features at issue in Johnson and Dimaya in the same problematic way.  The principle of constitutional avoidance further supports our determination that a case-specific, real-world approach applies to § 924(c)(3)(B).

Constitutional avoidance is an "interpretive tool . . . counseling that ambiguous statutory language be construed to avoid serious constitutional doubts." F.C.C. v. Fox Television Stations, Inc., 556 U.S. 502, 516 (2009). Under this principle, the "elementary rule is that every reasonable construction must be resorted to, in order to save a statute from unconstitutionality." Skilling v. United States, 561 U.S. 358, 406 (2010) (quotation marks and emphasis omitted); see Jennings v. Rodriguez, 138 S. Ct. 830, 836 (2018) ("[W]hen statutory language is susceptible of multiple interpretations, a court may shun an interpretation that raises serious constitutional doubts and instead may adopt an alternative that avoids those problems.").

Importantly, a court must start its inquiry with normal analysis: the canon "comes into play only when, after the application of ordinary textual analysis, the statute is found to be susceptible of more than one construction." Clark v. Martinez, 543 U.S. 371, 385 (2005); see United States v. Oakland Cannabis Buyers' Cooperative, 532 U.S. 483, 494 (2001) (holding that this canon "has no application in the absence of . . . ambiguity"). The chosen interpretation must be "plausible." Clark, 543 U.S. at 381; see Jennings, 138 S. Ct. at 842 (holding that the Ninth Circuit "misapplied the [constitutional avoidance] canon . . . because its interpretations of the three provisions at issue here are implausible").

As discussed, there is a clearly "plausible" interpretation here that does not raise potential vagueness problems: a case-specific approach, looking at a defendant's actual conduct in determining whether a "crime of violence" has been committed. Taking this approach avoids constitutional problems and, in turn, provides due respect to Congress, in presuming that Congress does not intend to craft unconstitutional laws. See Diop v. ICE/Homeland Sec., 656 F.3d 221, 231 (3d Cir. 2011).

To be clear, we are not creating any new rule of constitutional law here. Nor are we saying that Dimaya compels the result in this case. Instead, we are simply noting that taking the categorical approach to this statute might create constitutional problems. Therefore, interpreting the provision in another plausible way after ordinary textual analysis obviates this issue.

C. Douglas's Conspiracy as a "Crime of Violence" Under § 924(c)(3)(B)

Finally, we turn to whether Douglas's conspiracy -- when considering the "real-world conduct", Johnson, 135 S. Ct. at 2561 -- qualifies as a crime of violence under § 924(c)(3)(B). We hold that it does.

To be clear, we do not hold that all conspiracies to commit Hobbs Act robbery would constitute crimes of violence under

§ 924(c)(3)(B). When applying a case-specific, real-world approach, some such conspiracies would not qualify. In this, we differ from Barrett, which held, as an alternative to its adoption of the case-specific approach, that conspiracy to commit a Hobbs Act robbery is necessarily a crime of violence because "conspiracy to commit a crime of violence is itself a crime of violence." 903 F.3d at 175. And the government says it disagrees with this alternative holding in Barrett.

Here, the district court properly explained the elements of the § 924(c) charge to Douglas. See Fed. R. Crim. P. 11(b)(1)(G) (requiring the district court to determine that "the defendant understands . . . the nature of each charge to which the defendant is pleading").[17] Douglas's conditional plea came after the district court's order, denying his motion to dismiss, expressly determined that his actions constituted a "crime of violence" under § 924(c). Furthermore, the acts that Douglas admitted to in his guilty plea amply demonstrate that he committed a "crime of violence" as defined in the residual clause.

This court has earlier said, without reference to whether a categorical or case-specific approach should be used, that "a Hobbs Act conspiracy is a 'crime of violence' for purposes

---

[17] Even if there were error here, it would surely be harmless based on the facts that Douglas accepted in his plea agreement.

- 33 -

of Section 924(c)" under the residual clause. Turner, 501 F.3d at 67.[18]  We are at this point unwilling to say that the question can be resolved as a matter of law.  We think it properly must go to the jury for determination, if there is a trial.

Douglas's conspiracy to commit a Hobbs Act robbery qualifies as a "crime of violence" because "by its nature, [it] involve[d] a substantial risk that physical force against the person or property of another may be used in the course of committing the offense."  18 U.S.C. § 924(c)(3)(B).  Douglas joined the conspiracy knowing its goal.  Three of the conspirators, including Douglas, used substantial violence in the course of the robbery.  As discussed, during the robbery one or more of the conspirators: dragged a victim by the head through a hallway; brandished firearms; forced several victims around the house and

---

[18]    Accord United States v. Taylor, 176 F.3d 331, 338 (6th Cir. 1999) ("[A] conspiracy to commit a robbery that violates the Hobbs Act is necessarily a conspiracy that, by its nature, involves a substantial risk that physical force may be used against the person or property of another, and therefore is a crime of violence within the meaning of section 924(c)."); United States v. Phan, 121 F.3d 149, 152-53 (4th Cir. 1997) (holding, among other things, that conspiracy to commit Hobbs Act robbery is a crime of violence under 924(c)); United States v. Elder, 88 F.3d 127, 129 (2d Cir. 1996) ("[A] Hobbs Act conspiracy to commit robbery is by definition a conspiracy that involves a substantial risk that physical force may be used against the person or property of another."); United States v. Mendez, 992 F.2d 1488, 1492 (9th Cir. 1992) ("[W]here conspirators agree to use actual or threatened force, or violence to obtain personal property from another . . . the risk that physical force may be used in the course of the conspiracy is substantial within the meaning of § 924(c)(3)(B)." (quotation marks and citation omitted)).

outside with guns pressed against their heads, threatened to kill a victim multiple times; and beat all three victims with a crowbar, bloodying at least one.  The conspirators committed this violence in furtherance of the conspiracy's goals, namely to steal oxycodone and proceeds of drug dealing.  We do not determine the "substantial risk" of violence of a conspiracy by the conspiracy's outcome, and many conspiracies could pose a "substantial risk" of violence where little or no violence actually occurs, see Turner, 501 F.3d at 67; Phan, 121 F.3d at 152.

## III. Conclusion

For the foregoing reasons, we affirm the district court's denial of the motion to dismiss a portion of Count Six and affirm Douglas's conviction under § 924(c)(3)(B).